UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:23-cv-23408

MARK BENSON, FELICIA BENSON,
MALIKA JAMES, AMY CURTIS,
AND STEPHEN DUBOIS,

       Plaintiffs,

v.

CARNIVAL CORPORATION,

       Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, MARK BENSON, FELICIA BENSON, MALIKA JAMES, AMY CURTIS, AND STEPHEN DUBOIS ("PLAINTIFFS"), sue Defendant, CARNIVAL CORPORATION ("CARNIVAL"), and alleges:

1.　　MARK BENSON, FELICIA BENSON, and MALIKA JAMES are residents and citizens of the state of Illinois, AMY CURTIS and STEPHEN DUBOIS are residents and citizens of the state of Florida, and PLAINTIFFS are entitled to a jury trial pursuant to *Leslie v. Carnival Corp.*, 22 So. 3d 561,562, (Fla. 3d DCA 2008).

2.　　Defendant, CARNIVAL, is a foreign entity incorporated in Panama, with its principal place of business in Florida.

3.　　The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332. In the alternative, if diversity jurisdiction does not apply, then this matter

falls under the admiralty and maritime jurisdiction of this Court.

4.     CARNIVAL, at all times material hereto, through an agent:

a.     Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

b.     Was engaged in substantial activity within this state;

c.     Operated vessels in the waters of this state;

d.     Committed one or more of the acts stated in Florida Statutes §§ 48.081, 48.181 and/or 48.193;

e.     The acts of CARNIVAL set out in this Complaint occurred in whole or in part in this county and/or state.

f.     CARNIVAL was engaged in the business of providing to the public and to PLAINTIFFS in particular, for compensation, vacation cruises aboard their vessel(s), excursions, and/or premises.

5.     CARNIVAL is subject to the jurisdiction of the courts of the state of Florida.

6.     The causes of action asserted in this Complaint arises under the General Maritime Law of the United States.

7.     PLAINTIFFS have satisfied all conditions precedent to the bringing of this action.

**FACTS COMMON TO ALL COUNTS**

8.     At all times material hereto, CARNIVAL owned, operated, managed, maintained and/or controlled the vessel, the *Carnival Sunrise*.

9.    At all times material hereto, CARNIVAL owned, operated, managed, maintained and/or controlled the subject excursion.

10.    At all times material hereto, the subject excursion was provided by employees and/or agents of CARNIVAL, including, but not limited to, the excursion operator and the premise/bus owner (collectively referred to as the "Excursion Entities").

11.    At all times material hereto, all relevant personnel at the excursion location were crewmembers, employees, agents and/or borrowed servants of CARNIVAL, including, but not limited to, the Excursion Entities.

12.    On or about April 24, 2023, PLAINTIFFS were on a cruise in which the *Carnival Sunrise* was the cruise vessel, which had been in navigable waters.

**<u>Statements Concerning</u>**
**<u>Shore Excursions Generally and the Subject Excursion Specifically</u>**

13.    FELICIA BENSON paid for the ticket for the cruise in June 2023, MARK BENSON and MALIKA JAMES paid for the ticket for the cruise in February 2023, and AMY CURTIS and STEPHEN DUBOIS paid for the ticket for the cruise in March 2023.

14.    On April 24, 2023, PLAINTIFFS purchased the subject excursion, "Island Tram Calypso Tour" (hereinafter "subject excursion"), directly on CARNIVAL's Island, Half Moon Cay.

15.    PLAINTIFFS relied on the representations of CARNIVAL's staff on Half Moon Cay in purchasing the subject excursion, and CARNIVAL failed to disclose that the excursions, including the subject excursion, were operated by a third party operator and not by CARNIVAL

16.     At all times material hereto, the subject excursion was offered, marketed, sponsored, recommended, sold, arranged, owned, operated and/or managed by CARNIVAL, and PLAINTIFFS believed that the subject excursion was operated by CARNIVAL.

17.     At all times material hereto, PLAINTIFFS reviewed CARNIVAL's information and/or material concerning the subject excursion and relied upon CARNIVAL's representations exclusively and to PLAINTIFFS' detriment in deciding to purchase the subject excursion from CARNIVAL and to participate in same during PLAINTIFFS' cruise aboard the *Carnival Sunrise*.

## Subject Incident

18.     On or about April 24, 2023, as part of PLAINTIFFS' cruise, PLAINTIFFS participated in the subject excursion on Half Moon Cay, Bahamas.

19.     On April 24, 2023, PLAINTIFFSs were passengers on the *Carnival Sunrise*. The ship's voyage lasted from. PLAINTIFFS purchased the subject excursion on this date.

20.     PLAINTIFFS boarded a bus for the excursion along with other passengers and sat patiently awaiting their departure. The bus began to move without a driver present, and after several minutes, they crashed.

21.     As a result of the bus not having seat belts or any type of prior restraints, PLAINTIFFS were jolted forward (and all around) along with other passengers upon impact. After approximately 30 minutes after the incident, emergency crew members from the ship finally responded to assess everyone at the scene. PLAINTIFFS went to the medical center on the ship, but were informed that their injuries were not serious and did not need much, if any, treatment. Afterwards, the ship's medical staff assured PLAINTIFFS that someone from CARNIVAL would

reach out to them about the accident that occurred. However, no one from CARNIVAL contacted them.

22.     Among other things, CARNIVAL and the Excursion Entities provided a bus for PLAINTIFFS use that did not have its breaks engaged (or in the alternative, if the breaks were engaged, the breaks were inadequate, either because they had gone an unreasonable amount of time without being changed, or for another reason). Moreover, CARNIVAL and the Excursion Entities provided a bus for PLAINTIFFS use that did not have seatbelts or anything like a seatbelt to restrain them when the bus jolted forward. In addition, CARNIVAL and the Excursion Entities did not provide reasonable instructions or warnings to PLAINTIFFS during the excursion on what to do if the bus started moving without a driver in it, nor did they provide any instructions or warnings regarding the danger of something like this happening prior to the excursion.

23.     As a result, PLAINTIFFS suffered severe injuries, pain, and suffering.

24.     The excursion was purchased by PLAINTIFFS through CARNIVAL's excursion website. There was no sufficient mention in the advertisement or the purchase confirmation for the excursion from CARNIVAL that the excursion was being operated by independent contractors for whom CARNIVAL believed it was not responsible. Instead, CARNIVAL intentionally created the appearance that it was providing the excursion either directly or through agents of CARNIVAL. PLAINTIFFS placed trust in CARNIVAL and relied on CARNIVAL--not some unknown entity they had never heard of before. Furthermore, CARNIVAL received part of the fee that PLAINTIFFS paid for the excursion.

25.     At all times material hereto, CARNIVAL was or should have been on notice that the

subject excursion was dangerous and/or risk creating. This was known to it, and/or should have been known to it.

26.     Moreover, previous customers complained and/or commented about dangers virtually identical to the ones PLAINTIFFS encountered directly to CARNIVAL and its sister and parent corporations, through its website and/or through complaints, comments, and/or other reviews though other sources that CARNIVAL monitors and/or should monitor for the safety of its passengers on its excursions, such as Tripadvisor, and previous passengers sued CARNIVAL for virtually identical dangers encountered at other similar tours offered by these companies, such that CARNIVAL knew or should have known that these were common types of dangers in similar excursions that, at a minimum, it should have warned its passengers of.

27.     Moreover, CARNIVAL, and its sister and parent corporations, have been sued numerous times for negligent failure to retain in regard to its excursion operators, including the subject excursion operator.

28.     CARNIVAL was also made aware through other complaints, comments, and/or other reviews about these dangers of the subject excursion and/or similar excursions, including the following review from approximately January 2023 on CARNIVAL's own website advertising the subject excursion, which indicates that CARNIVAL knew that the subject bus was not safe:

> "**Bus broke down**, made us wait 45 minutes. The driver didn't allow us to sit together and told us to sit in the same seat. Not ADA-friendly, asked my ADA uncle to move a row back away from us. Takes you to a back alley and to see donkeys and that's about it. Save your money and pay a cab driver for a private tour you will have a much better time."

29.     CARNIVAL also knew or should have known of these dangers and/or issues as

complaints, comments, and/or other reviews were either posted on its website, which it either reviewed or should have reviewed prior to PLAINTIFFS' incident, and/or other sources it either reviewed or should have reviewed prior to PLAINTIFFS' incident.

30.    CARNIVAL's (as well as CARNIVAL's policies and procedures in regard to its excursion operators require that these operators disclose all prior incidents to CARNIVAL.

## FACTS CONCERNING THE RELATIONSHIP/ARRANGEMENT BETWEEN CARNIVAL AND THE EXCURSION ENTITIES

31.    At all times material hereto, the Excursion Entities were the agents and/or apparent agents of CARNIVAL by virtue of the following, such that CARNIVAL is estopped from denying that the Excursion Entities were the agents and/or apparent agents of CARNIVAL:

a. CARNIVAL made all arrangements for the subject excursion without sufficiently disclosing to PLAINTIFFS that the subject excursion was being run by another entity and/or entities that it did not believe were its agents; and/or

b. CARNIVAL marketed the subject excursion using its company logo on its website and/or in its brochures and/or on its ship without sufficiently disclosing to PLAINTIFFS that the subject excursion was being run by another entity and/or entities that it did not believe were its agents; and/or

c. CARNIVAL maintained an excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers about the subject excursion without sufficiently disclosing to PLAINTIFFS that the subject excursion was being run by another entity and/or entities that it did not believe were its agents; and/or

d. CARNIVAL recommended that its passengers not engage in excursions, tours and/or activities that are not sold through CARNIVAL; and/or

e. Until the point that PLAINTIFFS actually participated in the subject excursion, PLAINTIFFS' exclusive contacts concerning the subject excursion was with CARNIVAL; and/or

f. The fee for the subject excursion was charged to PLAINTIFFS, and collected from PLAINTIFFS, exclusively by CARNIVAL; and/or

g. PLAINTIFFS received the receipt for the purchase of the subject excursion exclusively from CARNIVAL.

32.     At all times material hereto, PLAINTIFFS relied on the above, to PLAINTIFFS' detriment, so as to believe that the Excursion Entities were the employee(s) and/or agent(s) of CARNIVAL, in choosing the subject excursion. At no time did CARNIVAL sufficiently represent to PLAINTIFFS in particular, or the ship's passengers in general, in a meaningful way that the Excursion Entities were not agent(s) and/or employee(s) of CARNIVAL.

33.     At all times material hereto, CARNIVAL was the owner or co-owner of the subject excursion. At all times material hereto, CARNIVAL was responsible for, and liable for, the actions of the Excursion Entities with respect to the subject excursion.

34.     In the alternative, at all times material hereto, a partnership and/or joint venture existed between the Excursion Entities by virtue of the following, whereby CARNIVAL and the Excursion Entities are jointly and severally responsible for the negligence of each other as partners of the partnership and/or joint venture:

a. CARNIVAL and the Excursion Entities entered into a verbal agreement and/or an agreement

through the course of its dealings with each other, whereby: CARNIVAL made all arrangements for PLAINTIFFS, on behalf of the partnership with the Excursion Entities, for the subject excursion being run by the Excursion Entities; and/or

b. CARNIVAL marketed on CARNIVAL's website and/or in its brochures and/or on its ship, on behalf of the partnership with the Excursion Entities, the subject excursion being run by the Excursion Entities; and/or

c. CARNIVAL maintained an excursion desk on its ship where it offered, sold, provided information to, and answered questions of passengers, on behalf of the partnership with the Excursion Entities, about the subject excursion being run by the Excursion Entities; and/or

d. The Excursion Entities provided the equipment to be used in the subject excursion; and/or

e. CARNIVAL determined the amount of money charged for the subject excursion being run by the Excursion Entities; and/or

f. CARNIVAL collected the amount of money charged for the subject excursion being run by the Excursion Entities; and/or

g. CARNIVAL shared profits with the Excursion Entities for the subject excursion by retaining a portion of the ticket sales for the subject excursion after the tickets were sold, and paying the Excursion Entities the remaining portion of the ticket sales for the subject excursion; and/or

h. CARNIVAL shared losses with the Excursion Entities for the subject excursion, including, for instance, when CARNIVAL issued a refund to passengers for the Excursion Entities' excursion(s), including, but not limited to, the subject excursion.

35. At all times material hereto, CARNIVAL was a partner in the subject excursion.

36.    At all times material hereto, CARNIVAL operated and/or supervised the subject excursion.

37.    At all times material hereto, the Excursion Entities owned and operated the subject excursion. The Excursion Entities were involved in providing the subject excursion to PLAINTIFFS. At all times material hereto, the Excursion Entities were the agent(s), apparent agent(s), joint venturer(s), servant(s), and/or employee(s) of CARNIVAL and at all times acted within the course and scope of their agency, apparent agency, joint venture, service and/or employment.

**FACTS CONCERNING THE NEGLIGENCE AGAINST THE EXCURSION ENTITIES**

38.    At all times material hereto, it was a duty of the Excursion Entities to provide PLAINTIFFS with reasonable care under the circumstances.

39.    On or about April 24, 2023, the Excursion Entities and/or their agents, employees and/or crewmembers breached their duty to provide PLAINTIFFS with reasonable care under the circumstances through the negligent instructions and other conduct of the excursion entity's tour guide, by failing to remedy, and by failing to warn of, the dangerous conditions discussed in **paragraphs 18-30**.

40.    These acts and/or omissions by the Excursion Entities, their agents, employees and/or crewmembers, directly caused and/or contributed to PLAINTIFFS being severely injured. These acts and/or omissions resulted in these conditions being unreasonably dangerous, which in turn caused PLAINTIFFS' incident. In turn, these acts and/or omissions resulted in PLAINTIFFS' injuries, pain, suffering, and other damages.

41.    At all times material hereto, the Excursion Entities knew of the foregoing conditions causing PLAINTIFFS' incident and did not correct them, or the conditions existed for a sufficient length of time so that the Excursion Entities, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them. Insofar as it relates to conditions that the Excursion Entities did not create, the Excursion Entities' knowledge was or should have been acquired through prior incident(s), through its maintenance and/or inspections of the subject excursion (including, but not limited to, inspections that revealed the dangers and/or which would have revealed the dangers had the inspections adequately taken place instead of either failing to occur and/or inadequately occurring), and/or through its training and/or supervision of its agents, employees and/or crewmembers, which either revealed or should have revealed their incompetence.

42.    As a direct and proximate result of the negligence of the Excursion Entities, PLAINTIFFS was injured about PLAINTIFFS' body and extremity, suffered physical pain, mental anguish, lost wages, lost earning capacity, loss of enjoyment of life, disability, disfigurement, traumatic stress and other mental and/or nervous issues, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of PLAINTIFFS' injuries, suffered physical handicap, both past and future. The injuries are permanent or continuing in nature and PLAINTIFFS will suffer the losses and impairments in the future. In addition, PLAINTIFFS lost the benefit of PLAINTIFFS' vacation, cruise, transportation, and other associated costs.

## COUNT I – NEGLIGENT RETENTION AGAINST CARNIVAL

PLAINTIFFS re-alleges, adopts, and incorporates by reference the allegations in paragraphs 1-30 and 38-42 as though alleged originally herein.

43.    At all times material hereto, it was the duty of CARNIVAL to provide PLAINTIFFS with reasonable care under the circumstances.

44.    At all times material hereto, CARNIVAL had a duty not to retain incompetent and/or unfit excursion operators.

45.    At all times material hereto, as part of its duty not to retain incompetent and/or unfit excursion operators excursion operators, it was incumbent on CARNIVAL to diligently inquire into the Excursion Entities' competency and fitness.

46.    On or about April 24, 2023, CARNIVAL and/or its agents, servants, joint venturers and/or employees breached its duty to provide PLAINTIFFS with reasonable care under the circumstances by retaining the Excursion Entities, who CARNIVAL knew or should have known were incompetent and/or unfit based on the failures discussed in **paragraphs 18-30**.

47.    At all times material hereto, CARNIVAL knew or should have known of the foregoing conditions causing the Excursion Entities' incompetence and/or unfitness, or the conditions existed for a sufficient length of time so that CARNIVAL, in the exercise of reasonable care under the circumstances, should have learned of them, for the reasons discussed in **paragraphs 25-30**, as well as through the following means:

a. CARNIVAL's initial approval process of the Excursion Entities and/or the excursion, including, but not limited to, having CARNIVAL's representative(s) take the excursion; and/or

b. CARNIVAL's yearly inspections of the Excursion Entities and/or the excursion, including, but

not limited to, conducting site inspections; and/or

c Thoroughly inquiring into the Excursion Entities' certification(s), reputation, reviews, prior incidents, years in operation, and/or history in working with other cruise lines; and/or

d. Examining the complaints and/or reviews of prior CARNIVAL passengers who had participated in the excursion; and/or

e. Periodically requesting and examining safety history reports from the Excursion Entities as well as periodically sending CARNIVAL's own staff to visit the excursion site(s) and evaluate the excursion experience.

48.     At all times material hereto, the Excursion Entities' incompetence and/or unfitness caused and/or contributed to PLAINTIFFS being severely injured while participating in the subject shore excursion.

49.     As a direct and proximate result of the negligence of CARNIVAL and/or the Excursion Entities, PLAINTIFFS was injured about PLAINTIFFS' body and extremity, suffered physical pain, mental anguish, lost wages, lost earning capacity, loss of enjoyment of life, disability, disfigurement, traumatic stress and other mental and/or nervous issues, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of PLAINTIFFS' injuries, suffered physical handicap, both past and future. The injuries are permanent or continuing in nature and PLAINTIFFS will suffer the losses and impairments in the future. In addition, PLAINTIFFS lost the benefit of PLAINTIFFS' vacation, cruise, transportation, and other associated costs.

WHEREFORE, PLAINTIFFS demand judgment for all damages recoverable under the

law and demand trial by jury.

## COUNT II – NEGLIGENT FAILURE TO WARN AGAINST CARNIVAL

PLAINTIFFS re-alleges, adopts, and incorporates by reference the allegations in paragraphs 1-30 and 38-42 as though alleged originally herein.

50. At all times material hereto, it was the duty of CARNIVAL to provide PLAINTIFFS with reasonable care under the circumstances.

51. At all times material hereto, it was the duty of CARNIVAL to warn passengers (like PLAINTIFFS) of dangers that were known, or reasonably should have been known, to CARNIVAL in places where passengers (like PLAINTIFFS) are invited to or may reasonably be expected to visit beyond the point of disembarkation.

52. On or about April 24, 2023, PLAINTIFFS was participating in the subject excursion, which CARNIVAL invited and reasonably expected PLAINTIFFS to participate in since CARNIVAL sold PLAINTIFFS the ticket for the excursion.

53. On or about April 24, 2023, CARNIVAL and/or its agents, servants, joint venturers and/or employees breached its duty to warn PLAINTIFFS by failing to warn of the dangerous conduct and conditions discussed in **paragraphs 18-30**.

54. All or some of the above acts and/or omissions by CARNIVAL and/or its agents, servants, and/or employees, caused and/or contributed to PLAINTIFFS being severely injured while participating in the subject excursion.

55. Had PLAINTIFFS been adequately warned, PLAINTIFFS would not have participated in the subject excursion, PLAINTIFFS' incident would not have occurred, and/or his

injuries would have been less severe.

56.     At all times material hereto, CARNIVAL knew of the foregoing dangerous conditions causing PLAINTIFFS' incident and failed to warn PLAINTIFFS about them, or the conditions existed for a sufficient length of time so that CARNIVAL, in the exercise of reasonable care under the circumstances, should have learned of them and warned about them. This knowledge was or should have been acquired through: (a) CARNIVAL's initial approval process of the Excursion Entities and/or the excursion, including, but not limited to, having CARNIVAL's representative(s) take the excursion; (b) CARNIVAL's yearly inspections of the Excursion Entities and/or the excursion, including, but not limited to, conducting site inspections; and/or (c) Prior substantially similar incidents involving CARNIVAL passengers injured on the subject excursion involving the same or substantially similar excursions operated by the Excursion Entities; and/or (d) Examining the complaints and/or reviews of prior CARNIVAL passengers and passengers of CARNIVAL's sister and parent corporation who had participated in the excursion, as well as the reasons discussed in **paragraphs 25-30**.

57.     As a direct and proximate result of the negligence of CARNIVAL and/or the Excursion Entities, PLAINTIFFS was injured about PLAINTIFFS' body and extremity, suffered physical pain, mental anguish, lost wages, lost earning capacity, loss of enjoyment of life, disability, disfigurement, traumatic stress and other mental and/or nervous issues, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of PLAINTIFFS' injuries, suffered physical handicap, both past and future. The injuries are permanent or continuing in nature and PLAINTIFFS will suffer the losses and impairments in the future. In addition, PLAINTIFFS lost the benefit of PLAINTIFFS' vacation, cruise, transportation,

and other associated costs.

WHEREFORE, PLAINTIFFS demand judgment for all damages recoverable under the law and demand trial by jury.

### COUNT III – NEGLIGENT MISREPRESENTATION AGAINST CARNIVAL

PLAINTIFFS re-alleges, adopts, and incorporates by reference the allegations in paragraphs 1-42 as though alleged originally herein.

58.     As the owner of a ship in navigable waters, CARNIVAL owed to all who are on board the Ship the duty of exercising reasonable care under the circumstances of matters related to the subject incident. This duty extends to shore excursions such as the subject excursion where the subject incident occurred. This duty applies to the representations that CARNIVAL made to passengers, including PLAINTIFFS, about the subject excursion, as well as CARNIVAL's omissions of material fact.

59.     On April 24, 2023, PLAINTIFFS purchased tickets for the subject shore excursion, "Island Tram Calypso Tour."

60.     On this day, CARNIVAL made the material omissions discussed in **paragraph 15**.

61.     Although CARNIVAL had, through its prior dealings with the excursion company offering this excursion, as well as its contacts, and as well as its office in Half Moon Cay (and the fact that it owned this island and was responsible for the transportation thereon), actual and/or constructive knowledge of the dangers of the subject bus, CARNIVAL never qualified its representations by noting any risk of serious and disfiguring injuries from such an excursion or from use of its island (Half Moon Cay) or the buses thereon.

62.    CARNIVAL failed to disclose that there were these serious and deadly risks and hazards associated with the shore excursion, and failed to warn of the risk of death or severe injuries.

63.    CARNIVAL promoted the subject excursion — while simultaneously failing to disclose certain negative information including its serious and life-threatening potential risks and hazards — with the intent of inducing PLAINTIFFS and other passengers to purchase the subject excursion.

64.    CARNIVAL received a financial benefit from the sale of every sale of the subject excursion through the website, including the sale of the ticket for this excursion to PLAINTIFFS.

65.    CARNIVAL knew or should have known that its failure to include statements about the risks of severe injuries or death was a failure to state material facts regarding the risk of the subject excursion.

66.    PLAINTIFFS purchased the subject excursion from CARNIVAL in reliance on the statements made by CARNIVAL about the excursion, and without the benefit of the material facts and information omitted by regarding the dangers of the buses, including the fact that the buses used on the island do not have seatbelts and do not engage adequate breaks, or other potential risks.

67.    As a direct and proximate cause of the reliance upon the negligent misrepresentations by CARNIVAL, PLAINTIFFS unknowingly proceeded with the subject, with frightful consequences. PLAINTIFFS has suffered ongoing mental anguish, lost wages, lost earning capacity, loss of enjoyment of life, permanent disability, permanent disfigurement, and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom,

incurred medical expenses in the care and treatment of PLAINTIFFS' injuries, are continuing to incur and will incur future medical expenses, suffered physical handicap, both past and future, as a result of the eruption of the subject incident, which could have been avoided had CARNIVAL but for CARNIVAL's negligent misrepresentations and material omissions.

68.    PLAINTIFFS asks for a trial by jury and a verdict and damages in their favor on this count of Negligent Misrepresentation.

<h3 style="text-align:center">COUNT IV – NEGLIGENCE AGAINST CARNIVAL<br>BASED ON APPARENT AGENCY OR AGENCY BY ESTOPPEL</h3>

PLAINTIFFS re-alleges, adopts, and incorporates by reference the allegations in paragraphs 1-42 as though alleged originally herein.

69.    At all times material hereto, the Excursion Entities were the apparent agent(s) of CARNIVAL.

70.    At all times material hereto, CARNIVAL is estopped to deny that the Excursion Entities were their agent(s) or employee(s).

71.    At all times material hereto, CARNIVAL made manifestations which caused PLAINTIFFS to believe that the Excursion Entities had authority to act for the benefit of CARNIVAL. These manifestations included:

a. CARNIVAL allowed its name to be utilized in connection with the advertising of the Excursion Entities; and/or

b. CARNIVAL made all arrangements for the subject excursion without effectively disclosing to PLAINTIFFS that the subject excursion was being run by another entity and/or entities that it did

**ARONFELD TRIAL LAWYERS**
**www.Aronfeld.com**
**Page 18 of 24**

not believe were its agents; and/or

c. CARNIVAL marketed the subject excursion using its company logo on its website and/or in its brochures and/or on its ship without effectively disclosing to PLAINTIFFS that the subject excursion was being run by another entity and/or entities that it did not believe were its agents; and/or

d. CARNIVAL maintained an excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers about the subject excursion without effectively disclosing to PLAINTIFFS that the subject excursion was being run by another entity and/or entities that it did not believe were its agents; and/or

e. Until the point that PLAINTIFFS actually participated in the subject excursion, PLAINTIFFS' exclusive contacts concerning the subject excursion was with CARNIVAL; and/or

f. CARNIVAL recommended to PLAINTIFFS to not engage in excursions, tours or activities that are not sold through CARNIVAL as CARNIVAL has no familiarity with other tours or their operations; and/or

g. The fee for the excursion was charged to PLAINTIFFS, and collected from PLAINTIFFS, exclusively by CARNIVAL; and/or

h. PLAINTIFFS received the receipt for the purchase of the subject excursion exclusively from CARNIVAL; and/or

i. The excursion was offered and utilized solely or virtually solely by CARNIVAL passengers at the time of the subject excursion and/or marketed by CARNIVAL.

72.     PLAINTIFFS reasonably relied on the above, to her detriment, so as to believe that

the Excursion Entities were the employee(s) and/or agent(s) of CARNIVAL in choosing the subject excursion.

73.    It was reasonable to believe that the Excursion Entities were CARNIVAL's employee(s) and/or agent(s) because PLAINTIFFS purchased, paid for and made all necessary arrangements for the subject excursion with CARNIVAL. CARNIVAL's actions caused PLAINTIFFS to believe that the Excursion Entities had authority to act on CARNIVAL's behalf. At no time did the Excursion Entities represent to the ship's passengers or PLAINTIFFS in particular in a meaningful way that the Excursion Entities were not agents or employees of CARNIVAL.

74.    PLAINTIFFS' reasonable reliance was detrimental because PLAINTIFFS would not have purchased, paid for and/or participated in the subject excursion had PLAINTIFFS known that the subject excursion was not operated by CARNIVAL and/or agents of CARNIVAL.

75.    The acts of negligence of the Excursion Entities discussed in **paragraphs 18-30**, acting as apparent agents for CARNIVAL, were a direct and proximate cause of PLAINTIFFS' injuries and damages.

76.    As a result of the negligence of the CARNIVAL, PLAINTIFFS was injured about PLAINTIFFS' body and extremity, suffered physical pain, mental anguish, lost wages, lost earning capacity, loss of enjoyment of life, disability, disfigurement, traumatic stress and other mental and/or nervous issues, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of PLAINTIFFS' injuries, suffered physical handicap, both past and future. The injuries are permanent or continuing in nature and PLAINTIFFS will

suffer the losses and impairments in the future. In addition, PLAINTIFFS lost the benefit of PLAINTIFFS' vacation, cruise, transportation, and other associated costs.

WHEREFORE, PLAINTIFFS demand judgment for all damages recoverable under the law and demand trial by jury.

**COUNT V – NEGLIGENCE AGAINST CARNIVAL BASED ON
JOINT VENTURE BETWEEN CARNIVAL AND THE EXCURSION ENTITIES**

PLAINTIFFS re-alleges, adopts, and incorporates by reference the allegations in paragraphs 1-42 as though alleged originally herein.

77.    At all times material hereto, CARNIVAL and the Excursion Entities engaged in a joint venture to provide excursions to passengers aboard CARNIVAL's ship(s).

78.    At all times material hereto, CARNIVAL and the Excursion Entities entered into a verbal agreement, which superseded any previous agreements, where CARNIVAL would sell the subject excursion to its passengers and the Excursion Entities would operate the subject excursion. In the alternative, CARNIVAL entered into an agreement through its course of conduct by engaging in the conduct discussed in **paragraphs 31-37 and 71**, which superseded any previous agreements.

79.    As its part of the joint venture, CARNIVAL arranged for, sponsored, recommended, marketed, operated, marketed, sold and/or collected money for the subject excursion, and the money was then shared between CARNIVAL and the Excursion Entities. As its part of the joint venture, the Excursion Entities provided labor and/or operated the subject excursion.

80.    CARNIVAL, on behalf of the joint venture, charged a fee to passengers who utilized

**ARONFELD TRIAL LAWYERS**
**www.Aronfeld.com**
**Page 21 of 24**

the excursions. The fee paid by the passengers, including PLAINTIFFS, was split between CARNIVAL and the Excursion Entities, such that CARNIVAL and the Excursion Entities shared a profit of the money made from the shore excursion.

81.    At all times material hereto, CARNIVAL and the Excursion Entities had joint and/or shared control over aspects of the joint venture. The Excursion Entities had control over the day-to-day workings of the excursions. CARNIVAL also had control over the day-to-day workings of the excursions in that they required the Excursion Entities to exercise reasonable care in the operation of the subject excursion. CARNIVAL had control over the arrangements, marketing and sales of the excursion.

82.    At all times material hereto, CARNIVAL and the Excursion Entities shared a common purpose: to operate the subject excursion for a profit.

83.    At all times material hereto, CARNIVAL and the Excursion Entities had a joint proprietary and/or ownership interest in the subject excursion. CARNIVAL had an interest in arranging, sponsoring, recommending, advertising, operating, and selling the subject excursion as well as collecting money for such excursion, and the Excursion Entities had a proprietary interest in the time and labor expended in operating the subject excursion.

84.    At all times material hereto, CARNIVAL and the Excursion Entities shared and/or had the right to share in the profits of the subject excursion, as CARNIVAL retained a portion of the ticket sales for the subject excursion after the tickets were sold, and CARNIVAL paid the Excursion Entities the remaining portion of the ticket sales for the subject excursion.

85.    At all times material hereto, CARNIVAL and the Excursion Entities shared and/or

had a duty to share any losses that may have been sustained with the subject excursion, including, for instance, when CARNIVAL issued a refund to passengers for the Excursion Entities' excursion(s), including, but not limited to, the subject excursion.

86.    CARNIVAL and the Excursion Entities are jointly and severally responsible for each other's negligence as partners of the partnership and/or joint venture.

87.    At all times material hereto, CARNIVAL and the Excursion Entities therefore:

a. Had an intention to create a joint venture;

b. Had a joint proprietary interest in the subject matter of the venture;

c. Had mutual control and/or joint control over the subject matter of the venture with respect to the provision of excursions to passengers aboard the ship;

d. Had a right to share in the profits of the joint venture; and

e. Would share losses which may have been sustained.

88.    As joint venturers, CARNIVAL and the Excursion Entities are liable for each other's negligence. As a result, CARNIVAL is liable for the negligence of the Excursion Entities discussed in **paragraphs 18-30**.

89.    As a result of the negligence of CARNIVAL, PLAINTIFFS was injured about PLAINTIFFS' body and extremity, suffered physical pain, mental anguish, lost wages, lost earning capacity, loss of enjoyment of life, disability, disfigurement, traumatic stress and other mental and/or nervous issues, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of PLAINTIFFS' injuries, suffered physical handicap,

both past and future. The injuries are permanent or continuing in nature and PLAINTIFFS will suffer the losses and impairments in the future. In addition, PLAINTIFFS lost the benefit of PLAINTIFFS' vacation, cruise, transportation, and other associated costs.

WHEREFORE, PLAINTIFFS demand judgment for all damages recoverable under the law and demand trial by jury.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiffs, MARK BENSON, FELICIA BENSON, MALIKA JAMES, AMY CURTIS, AND STEPHEN DUBOIS, demand trial by jury on all issues so triable.

Dated: September 6, 2023

Respectfully submitted,

*/s/ Spencer Aronfeld*
**Spencer M. Aronfeld, Esq**.
Florida Bar No.: 905161
aronfeld@Aronfeld.com
**Abby Hernández Ivey, Esq**.
Florida Bar No. 1002774
aivey@aronfeld.com
**Matthias M. Hayashi, Esq**.
Florida Bar No.: 0115973
mhayashi@aronfeld.com
ARONFELD TRIAL LAWYERS
1 Alhambra Plaza | Penthouse
Coral Gables, Florida 33134
P:      (305) 441.0440
F:      (305) 441.0198
***Attorneys for Plaintiffs***